

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CIVIL ACTION

CASE NO.

ACQUINITY INTERACTIVE, LLC,
A Delaware limited liability company;

12-60275-CIV-Dimitrouleas/Snow

Plaintiff,

v.

BRIAN MASIN, DIGITAL HELIX INTERACTIVE,
INC., a Virginia corporation; and JOHN DOES 1
THROUGH 10, individuals or entities presently
unknown,

Defendants.
_____/

**VERIFIED COMPLAINT**

Plaintiff, Acquinity Interactive, LLC, a Delaware limited liability company registered to do business in Florida, sues Defendants, BRIAN MASIN, DIGITAL HELIX INTERACTIVE, INC., a Virginia corporation, and John Does 1 through 10, individuals or entities presently unknown, for temporary and permanent injunctive relief, monetary damages, and other relief, and allege as follows:

**JURISDICTION AND VENUE**

1. This is an action for violation of, and civil remedies under, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C) and 18 U.S.C. § 1030(a)(4), et seq. (the "CFAA;" entitled "Fraud and Related Activity In Connection With Computers"), concerning the theft and unauthorized sale of commercial computer data used in interstate and

international commerce, and for ancillary relief under the law of Florida pursuant to state-law causes of action arising from the same facts.

2. This Court has federal question jurisdiction over the subject matter of the claims arising out of 28 U.S.C. § 1030 and 18 U.S.C. § 1961 pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over the Plaintiff's Florida law claims because they arise out of the same case or controversy, pursuant to 18 U.S.C. § 1367.

4. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims herein occurred in the Southern District of Florida, since the data stolen from Plaintiff was stolen by means of accessing Plaintiff's computer systems that contain its data and control its data feed, which are located in the Southern District of Florida.

5. Plaintiff's computer and information systems, as well as those of its duly licensed partners who are authorized to receive and maintain Plaintiff's data, to which Plaintiff retains exclusive access and control, are "protected computers" under the CFAA because they are used in interstate and/or foreign commerce or communication, and include computers and servers that are connected to the Internet.

**PARTIES**

6. Plaintiff Acquinity Interactive LLC, is a limited liability company organized and existing under the laws of Delaware, with its registered agents office in Palm Beach County, Florida and an office for the transaction of its business in Broward County, Florida. It is a citizen of Delaware and Florida and Canada. It is the purchaser of certain assets of ModernAd Media, LLC, including its proprietary data.

2

7. Defendant Brian Masin is a citizen of Virginia, and is a principal and person in control of Defendant Digital Helix Interactive, Inc. He ultimately directs the Internet operations of Digital Helix Interactive, Inc., including its website.

8. Defendant, Digital Helix Interactive, Inc., is a Virginia corporation having its principal place of business in Centreville, Fairfax County, Virginia. It is a competitor of the Plaintiff, or deals in similar data as does the Plaintiff, for a similar purpose as does the Plaintiff.

9. Defendants, John Doe 1 through 10, are persons or individuals unknown at this time who have acted under the direction of, or have combined and conspired with, Defendants Brian Masin and/or Digital Helix Interactive, Inc. in accessing computers or websites owned or controlled by Plaintiff for the purpose of obtaining Plaintiff's data without authorization. Motions for substitution of parties will be filed, or other procedurally necessary steps will be taken, to substitute the correct names of the John Doe defendants when they are identified through discovery.

10. All conditions precedent to bringing this action, if any, have been performed, excused or otherwise waived as being futile.

11. Plaintiffs were required to retain the undersigned counsel to represent them in this matter and have become obligated to pay reasonable attorneys' fees for these services.

**GENERAL ALLEGATIONS**

12. Plaintiff, Acquinity Interactive, LLC, is in the business of marketing. By means of a proprietary and highly confidential and secret process, it compiles data on prospective customer leads and contacts, which it sells to major business clients throughout the

United States. The quality of the data sold by Plaintiff is evaluated by how likely the listed prospective customers are to buy the client's products.

13. Plaintiff's highly confidential and proprietary systems, which Plaintiff has spent millions of dollars in developing and refining, produce extremely high-quality data that is economically extremely valuable. Accordingly, Plaintiff only sells its data to exclusive partners under an obligation to keep the data strictly confidential, and maintains ownership, control and exclusive rights over the data itself.

14. The Plaintiff's real-time data feed, as well as prior time periods' ("legacy") data records, are derived by highly secret, proprietary systems, process, program, and framework that are highly confidential and extremely valuable. It embodies intellectual processes and know-how that are the products of many thousands of hours of high-level development. The data derives its independent economic value, both actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

15. Plaintiff has reasonably endeavored to maintain the secrecy of its data and its processes since the onset of its development. There is marketability in access to the live data feed that will be destroyed if the feed is misappropriated, disclosed, or otherwise acquired by improper means.

16. Beginning in or about February, 2012, the defendant, Brian Masin, began offering not only legacy records of Plaintiff's data, but also the live (real-time) data stream itself. Attached as Composite Exhibit "A" are e-mails by which Brian Masin offers for sale millions of records of what he unmistakably refers to as Plaintiff's data, including the daily live feed.

4

17. The only way that the Plaintiff's daily live feed can be obtained is via unauthorized access to Plaintiff's computer systems, or computer systems owned by Plaintiff's partners and clients in which the data is under the exclusive ownership and control of the Plaintiff.

18. Defendant Brian Masin, personally or through his agents, using Defendant Digital Helix Interactive's resources, which he controls, neither of whom being authorized or licensed to receive the data, has obtained, used, or exercised control, without authorization from Plaintiffs, and appropriated or converted to his own use, or to the use of other persons or entities not entitled to its use, Plaintiff's data and the live feed thereof.

19. The taking was willful, malicious, and intended to injure Plaintiffs and their business. If Defendant Brian Masin is allowed to continue the indiscriminate, unauthorized sale of Plaintiff's data, Plaintiff's business, which is built on the exclusivity and value of the data, will be destroyed, and Plaintiff will suffer damages in the form of lost revenues, lost opportunities and damage to its business goodwill in the millions of dollars.

20. Defendant Brian Masin openly admits that he is selling the data. He is selling it with intent to, either temporarily of permanently, deprive the Plaintiffs of the exclusive right to sell the data, as well as the benefits from it, and to maliciously destroy Plaintiff's business.

21. The value of the trade secrets that the data constitutes, and which are being destroyed by Defendants Brian Masin and Digital Helix Interactive, Inc., do not at this time have a readily ascertainable market value. The reasonable value of the trade secrets is represented by the damage to Plaintiff that will be suffered by reason of losing an advantage over those who do not know of or use the trade secret.

22. If an injunction does not issue immediately to the Defendants, the Plaintiffs will suffer immediate, continuing and irreparable harm, in that their business will continue to be irreparably impaired if the data becomes indiscriminately available without proper licensing and controls. Plaintiff will not only lose the opportunity to sell the data, but if the Defendants continue to publish, transfers or reveal the data, its entire value and uniqueness will be lost.

23. Such harm will not be redressable by a money judgment for damages or other remedy at law, since the disclosure or sale to another party of the data will immediately and totally destroy its value to Plaintiff, and Plaintiff will lose all rights to profit from its development and marketing in the future. Accordingly, any remedy at law would be inadequate.

24. Plaintiff's rights to data that it develops, keeps secret and whose use is kept strictly controlled are clear, as is its likelihood of success on the merits, in that regardless of how the Defendants may have obtained the data (which can only be obtained by accessing computers in Plaintiff's network or subject to Plaintiff's control), everyone in the business knows that the data is available only from Plaintiff, to the extent that Defendants must identify it as Plaintiff's data in order to sell it.

25. In contrast, Defendants Brian Masin and Digital Helix Interactive, Inc., do not have any legal right to sell the data or thus interfere maliciously and destructively with the Plaintiffs' business and property rights. The tort counts pled in this Complaint, and the damages being suffered by reason of Defendant's conduct, occurred and continue to occur in Florida, Plaintiff's computers are being accessed in Florida, the selling of Plaintiff's data is contrary to the public policy of Florida, and are redressable in this

6

Court pursuant to federal and Florida law. Accordingly, to enjoin Defendant from accessing Plaintiff's computers and/or selling Plaintiff's data will not disserve the public interest.

26. No efforts have been made to give notice to the Defendant, and Plaintiff urges that none should be given under the circumstances. Unless the Defendants are temporarily enjoined immediately without notice before the Defendants can be heard in opposition, immediate and irreparable harm injury, loss or damage will result to Plaintiff, in that literally millions of records and Plaintiff's live feed are being put into uncontrolled distribution. If this does not cease immediately, not only will Plaintiff suffer economic damage redressable in dollars, but many thousands of extremely high quality contacts will be revealed on an hourly basis, destroying the value of Plaintiff's database as a whole, its business goodwill, and its commercial viability. Defendant are likely to engage, if they are given notice, in malicious and destructive behavior, such as uploading the data into a server that may be publicly accessible and thus destroying the value of the data. The Defendants' due process rights will be protected by setting a prompt permanent injunction hearing, pursuant to Fed. R.Civ. P. 65.

27. In view of the clarity of the rights of the Plaintiff and the low likelihood that Defendants might be damaged by being wrongfully enjoined under the circumstances, Plaintiffs urge that a temporary restraining order security of $5000 is reasonable.

### COUNT I
### THEFT OF COMPUTER DATA
### 18 U.S.C. § 1030(a)(2)(C)

28. Plaintiffs repeat the allegations of Paragraphs 1 through 27 as though fully set forth herein.

29. Defendants have knowingly and intentionally, directly or through their agents, accessed Plaintiff's protected computers as aforesaid without authorization, or have exceeded their authorization due to having accessed the systems for improper purposes, and have thereby obtained information therefrom, to wit: the Plaintiff's data records.

30. The data obtained involves interstate and/or foreign communications.

31. The damage is resulting from Defendants conduct is more than $5,000 in any one-year period.

32. The foregoing is a violation of 18 U.S.C. § 1030(a)(2)(C) and subjects Defendants to a civil action for compensatory damages, injunctive relief, or other equitable relief pursuant to 18 U.S.C § 1030(g).

## COUNT II
## UNAUTHORIZED ACCESS WITH INTENT TO DEFRAUD
## 18 U.S.C. § 1030(a)(4)

33. Plaintiffs repeat the allegations of Paragraphs 1 through 27 as though fully set forth herein.

34. Defendants have, knowingly and with intent to defraud, accessed Plaintiff's protected computers as aforesaid, unlawfully without authorization, or have exceeded whatever authorized access their agents may have, by dishonest methods and for improper purposes, as aforesaid.

35. The object of the fraud consists of more than access to or use of the computers themselves, being to profit from the sale of the data for more than $5,000 in any one-year period.

36. The data obtained involved interstate and/or foreign communications.

37. The foregoing is a violation of 18 U.S.C. §1030(a)(4) and subjects defendant to a civil action for compensatory damages, injunctive relief, or other equitable relief pursuant to 18 U.S.C. § 1030(g).

### COUNT III
### MISAPPROPRIATION OF TRADE SECRETS
### (FLORIDA TRADE SECRETS ACT - § 688.001 et seq.)

38. Plaintiffs incorporate by reference paragraphs 1-27 above as if fully set forth herein.

39. The data was at all relevant times a trade secret of Plaintiffs within the meaning of § 688.002(4), Fla. Stat., the Florida Trade Secrets Act.

40. The data and trade secret that it embodies derives independent economic value from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure or use.

41. The data also was the subject of efforts that were reasonable under the circumstances to maintain its secrecy. Such efforts included among others requiring persons to have proper authorization and licensing to gain access to the data.

42. Defendants acquired the data/ trade secret by improper means as described above.

43. The data was secret and, having been developed internally, was not known outside of Plaintiff's business or Plaintiff's authorized distribution channels.

44. Plaintiff took substantial measures to guard the secrecy of the information as described above.

45. The data is of substantial value to Plaintiff and, as misappropriated, to Plaintiff's competitors.

46. As described above, Plaintiffs made substantial efforts and expended substantial amounts of money and time in developing the data.

9

47. Absent Defendants' unlawful taking, Plaintiff's competitors would have substantial difficulty to develop the same data.

48. Section 688.003 Florida Statutes permits injunctive relief, specifically, "[i]n appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order."

49. As a direct and proximate result of Defendant's misappropriation of the Software trade secret, Plaintiffs have been damaged in an as yet undetermined amount, but in excess of $15,000.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for the following relief:

1. Pursuant to 28 U.S.C §1030 and Sec. 688.003, Fla. Stat.,
    a. For a Temporary Restraining Order Without Notice, prohibiting defendants, and all those acting in concert with them, from in any way disclosing, publishing, transferring, copying, uploading, selling, or in any way revealing or communicating any part of the Plaintiff's data, to any party or entity.
    b. For a Temporary Injunction, after an emergency hearing;

    i. Enjoining Defendants, and all those acting in concert with them, from in any way disclosing, publishing, transferring, copying, uploading, selling, or in any way revealing or communicating any part of the Plaintiff's data, to any party or entity.

    ii. Commanding Defendants to destroy, and not to retain any copies, of the data;

    iii. Enjoining Defendants to immediately disclose to Plaintiffs the identity of all those to whom Defendants have sold, transferred or disclosed the data, including, without limitations, any John Doe defendants;

    iv. Enjoining Defendant from in any way accessing Plaintiffs' systems, servers and sites, or servers and sites duly licensed by Plaintiff, to obtain any of Plaintiff's data;

c. For a permanent injunction continuing the temporary injunction prayed for in the preceding subparagraph b.

d. For a judgment against Defendant for damages and costs of this action.

Signed on February 14, 2012

By: _____
Carlos De Zayas
Florida Bar No. 198617
LYDECKER | DIAZ
1221 Brickell Avenue
19th Floor
Miami, Florida 33131
(305) 416-3180 Telephone
(305) 416-3190 Facsimile
e-mail cdz@lydeckerdiaz.com
*Attorneys for Acquinity Interactive, LLC*

## **VERIFICATION**

My name is Garry Jonas. I have read the foregoing Complaint and all of the facts set forth above are true. I am aware that if any of the facts set forth above are not true, I am subject to punishment.

DATED at Deerfield Beach, Florida on this 14th day of February, 2012


Garry Jonas, CEO

SWORN TO and subscribed before me on this 14th day of February, 2012 by Garry Jonas, who produced as identification ~~Canadian~~ driver's license number J520-280-67-087-0 and who did take an oath. *FLORIDA*

My Commission Expires:          Notary Public -State of Florida at Large


MICHAEL S HOLT
MY COMMISSION # DD931201
EXPIRES October 31, 2013
(407) 398-0153   FloridaNotaryService.com

12

ok....i have month old data from modernads...120k with name email postal phone and then another 400k with name postal and email. any interestT? flat fee of $2k to you. if you want a million records i can get down to $3k. or we couuld do the entire legacy file of 22 million records, which is from january 2011 to november, for $20K. Be willing to bet you wont find the data cheaper anywhere else.

Also, i have access to same day for $.15 per record

Brian Masin
Digital Helix
info@dhinteractive.net
703.5544233
703.815.2573 fax

Composite Exhibit "A"

i have day of modernads data at $.15 a record no email but postal and phone...or i have 200k month old records with full data for $.03 a record.

let me know if interested


Brian Masin
Digital Helix
info@dhinteractive.net
703.5544233
703.815.2573 fax

Composite Exhibit "A"